JANUARY TERM, 1884, No. 30.          JANUARY 30, 1884.

## Littlefield's Appeal.

A, engaged in active business, conveyed to his wife as a gift real es-
tate valued at $19,000. At the time A's business was in prosperous
condition; he was possessed of property other than that so conveyed
to the amount of more than $25,000; he was indebted at the same time
in the sum of about $5,000. This indebtedness was all paid within a
few months. Three years later he failed; his wife sold a portion of
the real estate which A had conveyed to her to a judgment creditor of
her husband, who, in consideration thereof, assigned to her the judg-
ment he held against A. A's wife also held another small judgment
against him; on this latter judgment she caused execution to be is-
sued, and had sold, as the property of her husband, the remaining real
estate which he had conveyed to her. The fund thus produced was
claimed before an auditor both by A's wife on account of the two judg-
ments held by her, and by B, a judgment creditor of A, whose judgment
had been obtained subsequently to those held by A's wife. The au-
ditor found in addition to the above facts that there was no purpose to
defraud creditors by the conveyance, and that it was not made in an-
ticipation of future indebtedness. *Held,* that the fund was properly
awarded to the wife of A.

Before MERCUR, C. J.; GORDON, PAXSON, TRUNKEY,
STERRETT, GREEN, and CLARK, J.J.

Appeal of George L. Littlefield and Alfred H. Little-
field, trading as Littlefield Brothers, from a decree of the
Court of Common Pleas, No. 2, of *Philadelphia County.*

This, in the court below, was a contest between Little-
field Brothers and Charity Harned, judgment creditors
of Lewis M. Harned, who was the husband of Charity Har-
ned, as to the distribution of a fund in court produced by
a sheriff's sale of Harned's real estate under his wife's exe-
cution.

Charity Harned claimed the entire fund ($1,800) on two
judgments, one dated October 22, 1879, in court of com-
mon pleas, No. 2, to September term, 1879, No. 556, for
$15,000, originally obtained by Joshua Peirce, and on
December 19, 1879, by him marked to the use of Charity
Harned; the other also in court of common pleas, No. 2,
to December term, 1879, No. 69, dated December 8, 1879,
for $958 21.

On the first judgment, of $15,000, a *fi. fa.* was issued,
and the fund realized from sheriff's sale of personal prop-
erty on the 8th day of November, 1879, amounted to
$8,970 80, thus leaving a balance due on said judgment of
$6,029 20.

On the other judgment, of $958 21, an execution was issued, and a fund realized by sheriff's sale of personal property on December 17, 1879, of $685 50, thus leaving a balance due on this judgment of $272 71.

Littlefield Brothers claimed on a judgment obtained in court of common pleas, No. 4, on the 20th day of May, 1882, to March term, 1882, No. 513, for $883 75

Thomas B. Reeves was appointed auditor to make distribution of the fund. He found the following facts.

*First.* That Lewis M. Harned and wife, by deed dated October 3, 1876, and recorded October 17, 1876, in deed-book, D. H. L., No. 45, page 510, conveyed to James N. Dickey certain premises on the east side of Sixth street, in the Sixth ward of the city of Philadelphia, and that the said James N. Dickey and wife, by deed dated October 14, 1876, recorded October 17, 1876, in deed-book, D. H. L., No. 45, page 501, conveyed the same premises to Charity Harned, wife of Lewis M. Harned.

Subsequently, on the 13th day of December, 1879, Charity Harned conveyed these same premises to Joshua Peirce, the deed being recorded in deed-book, L. W., No. 74, page 65. The consideration of this last conveyance was the assignment by Joshua Peirce to Mrs. Charity Harned of the judgment held by him against L. M. Harned and others, and also of whatever stock and machinery Peirce had purchased at the sheriff's sale in Bristol.

*Second.* That Lewis M. Harned and wife, by deed dated November 1, 1876, and recorded June 2, 1877, in deed-book, D. H. L., No. 86, page 550, conveyed certain premises, No. 2202 Venango street, to James N. Dickey; and James N. Dickey and wife, by deed dated November 2, 1876, recorded June 2, 1877, in deed-book, D. H. L., No. 86, page 475, conveyed the same premises to Charity Harned, wife of Lewis M. Harned.

It was upon an execution issued upon this last-named property, selling all the right, title, and interest of Lewis M. Harned in said property, that the present fund is realized.

*Third.* That at the time of these conveyances—to wit: November 1, 1876—Mr. L. M. Harned was doing a prosperous business in the manufacture of upholstery trimmings in this city, and was perfectly solvent then, and so continued for a period of over two years thereafter.

Subsequently, in 1877, through the advice of parties from whom he made his purchases in trade, he removed his manufacturing to Bristol, Bucks county, Pa., where he continued to manufacture in the same business that he

had formerly conducted in Philadelphia until 1879 when he failed.

*Fourth.* At the time of the conveyance, in 1876, it appeared that the total amount of Mr. Harned's liabilities did not exceed $5,000, exclusively consisting of the then current liabilities of his business; all of which was paid at maturity, he doing business on sixty and ninety days' credit, which was considered equivalent to cash. It also appeared that at the time of the conveyances—to wit: November 1, 1876—the machinery in the establishment of L. M. Harned was worth $20,000, on which he did not owe one dollar. It further appeared that, in addition to his machinery, he had stock on hand and bills receivable amounting further to from $7,000 to $10,000; so that at the time of the conveyance to his wife he was perfectly solvent.

*Fifth.* It did not appear that the removal of the business to Bristol rendered it hazardous, but, on the contrary, it did appear before your auditor that the facilities for carrying on the business there were greater than they were in Philadelphia, and the expenses less—notably decrease of rent, water rent, taxes, etc.; and in fact it was proven before your auditor that the business whilst conducted there was prosperous throughout 1877 and 1878 and the early part of 1879. It also appeared that the business in Bristol was the same identically in every particular as that which he had conducted so successfully in Philadelphia.

Your auditor reports that at most the removal to Bristol was nothing more than a mistake of judgment, becoming only apparent in the subsequent part of the year 1879.

*Sixth.* That no debt or liability which was in existence or contracted at the time of the conveyances—November 1, 1876—was in existence at the time of the sheriff's sale, under which this fund was created; in fact all the liabilities (which, aggregated, did not exceed $5,000 as above stated) were fully paid by Mr. Harned within ninety days after November 1, 1876, being as soon as the same had matured.

*Seventh.* Your auditor further finds, as a fact, that, treating the deeds as a voluntary conveyance, there was no evidence produced before him to prove any purpose to defraud creditors by such conveyances by Mr. Harned indirectly to his wife; the fact being that Mr. Harned, at the time of said conveyances to his wife, was possessed of other property in his own name belonging to him, amount-

ing to more than five times the amount of any liability existing at that time or for some considerable length of time afterward. Your auditor further finds that said conveyance was not made in anticipation of future indebtedness, because for a considerable space of time after the conveyances the amount of the current liabilities did not increase to any appreciable extent.

The deeds mentioned in the auditor's findings were offered in evidence before him on behalf of Littlefield Brothers in an attempt to prove fraud on the part of Harned in executing them; it was shown that at the time of these conveyances, Harned was indebted to Littlefield Brothers in the sum of $813; this sum was paid within sixty or ninety days thereafter, and a fresh debt incurred, and this mode of dealing was continued until Harned's failure, when he owed them $833 75.

The auditor awarded the entire fund, after deducting the expenses of the audit, to Charity Harned.

Exceptions filed on behalf of Littlefield Brothers were dismissed, and the auditor's report confirmed; whereupon they took this appeal, assigning for error, *inter alia*, the award to Charity Harned as owner of the Peirce judgment, the failure to direct payment of the Littlefields' judgment, the dismissal of their exceptions, and the confirmation of the auditor's report.

*Charles L. Lockwood* and *Joseph A. Sinn* for appellants.

*First.* The fund in court is raised by a sale of the grantor's right, title, and interest in the conveyance, and, therefore, should be distributed on the theory that the conveyance was fraudulent. The inquiry is not whether the gift was valid, but against whom was it invalid. No one, except those creditors who had a right to attack the title, which right has been divested by the sale, can share in the proceeds: Hoffman's Appeal, 8 Wright, 95; Beekman's Appeal, 2 Wright, 385; Haymaker's Appeal, 3 P. F. Smith, 306.

The ground upon which voluntary settlements are supported is that they are provisions for a wife or family. They should not be supported when it is evident that the subject of the transfer was to be used for the husband's benefit, and to keep his creditors at bay.

This case presents a most extraordinary state of facts— a husband in business and in debt, owning real estate, machinery, and stock in trade—a wife, without any separate estate, (except that embraced in the small undis-

puted judgment,) who first gets the real estate, then gives up part of that and gets the machinery and stock and a creditor's judgment, and then keeps alive this judgment and uses it against her husband's creditors.   If the transfer to her was valid, she should have relied upon it, and would have had the protection of the law.   Having abandoned that position, and declared that though the transfer was not valid, yet she would take, as a creditor, what she did not get under the transfer, her claim should not prevail against honest creditors.

*Second.* She is estopped from claiming the fund.

*Third.* When the owner was indebted at the time of the conveyance, but afterward paid off the debt by new purchases on credit, even the new subsequent creditors are subrogated to the rights of existing creditors.

*Fourth.* There is ample evidence that appellants were, intended to be defrauded.

*Ernest Lowengrund* and *Octavius A. Law* for appellee.

The statute of 13 Eliz. does not make a voluntary conveyance void simply because the grantor is indebted at the time : Mateer *v.* Hissim, 3 P. & W., 160.

The debts must bear some proportion to the remaining property of the grantor, which will render their payment doubtful : Wilson *v.* Howser, 2 Jones, 109 ; Townsend *v.* Maynard, 9 Wr., 198 ; Thacher *v.* Phinney, 7 Allen, 146; Woolston's Appeal, 1 P. F. Sm., 452.

Even if the property conveyed had been all the husband owned, the gift would have been good as against subsequent creditors unless a fraudulent intent, as to them, could be affirmatively shown : Nippes' Appeal, 25 P. F. Sm., 472 ; Williams *v.* Davis, 19 *Id.*, 21.

In order to overthrow a gift to a man's wife on the ground that it is an unreasonably large provision for her, it must appear not only that he is thereby denuded of all or the greater part of his property, but that the gift leaves him practically insolvent : Ammon's Appeal, 13 P. F. Sm., 284 ; Coates *v.* Gerlach, 8 Wr., 43 ; Conley *v.* Bentley, 6 Norris, 40 ; Harlan *v.* Maglaughlin, 9 *Id.*, 293 ; Kimble *v.* Smith, 14 *Id.*, 69.

FEBRUARY 11TH, 1884.—PER CURIAM : It is found as a fact that when Harned conveyed the property in question to his wife, he was possessed of other property, the value of which was more than five times the amount of all his liabilities then existing, or which were incurred for some considerable time thereafter, and that there is no evidence

[McConnell v. Gates.]

of any purpose either to defraud creditors by the conveyance, or that it was made in anticipation of future indebtedness. It further appears that all his indebtedness which existed at the time the conveyance was made has been paid. The finding of the auditor is well sustained, and the Court was right in confirming it, and in deciding accordingly.

Decree affirmed and appeal dismissed at the costs of the appellants.